Case: 3:05-cv-00180-bbc Document #: 1 Filed: 05/10/05 Page 1 of 9

Document Number 01  Case Number 05-C-0180-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
05/10/2005 02:12:42 PM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRENTON SCHEIBE,

                             Petitioner,

    v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

                             Respondent.

ORDER

05-C-180-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a proposed civil action for monetary relief brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. Petitioner Trenton Scheibe, who resides in Marshfield, Wisconsin, contends that respondent National Board of Medical Examiners violated the ADA by refusing his request for an accommodation in connection with a standardized test it administered. Petitioner seeks leave to proceed without prepayment of fees and costs or providing security for such fees and costs, pursuant to 28 U.S.C. § 1915. From the affidavit of indigency accompanying petitioner's proposed complaint, I conclude that petitioner is unable to prepay the fees and costs of instituting this lawsuit.

       In addressing any pro se litigant's complaint, the court must construe the complaint liberally, <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972), and grant leave to proceed if there

1

is an arguable basis for a claim in fact or law. Neitzke v. Williams, 490 U.S. 319 (1989). However, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief, the case must be dismissed promptly pursuant to 28 U.S.C. § 1915(e)(2).

From his complaint and the attached exhibits, I understand petitioner to be alleging the following.

ALLEGATIONS OF FACT

Petitioner Trenton Scheibe entered the University of Texas-Houston Medical School in 1997. The medical school requires each student to take the United States Medical Licensing Exam Step 1 after completing all of the required basic science courses and before entering the final two years of study, during which the student participates in clinical medicine clerkships. Petitioner took the test on July 19, 2000 and failed. However, he was allowed to begin his clerkship because at the time, the medical school did not require a student to pass the test before beginning his clerkship. Petitioner's clerkship was in internal medicine.

As part of each clerkship, the university administers a standardized exam promulgated by respondent National Board of Medical Examiners that is oriented to each clinical rotation. Each clerkship has different passing score requirements. If a medical student does

2

not receive a passing score, he must participate in a "remedial month" of his clerkship. If the students fails the test a second time, he must repeat the entire clerkship. Petitioner failed respondent's test for his internal medicine clerkship in December 2000. Petitioner completed the remedial month of his clerkship and took the test a second time in August 2001. Again, he did not receive a passing score. As a result, he was required to repeat his entire clerkship, which lasted three months.

After his second failed attempt to pass respondent's test, petitioner approached school officials about his difficulty with the internal medicine exam as well as other standardized exams promulgated by respondent. Specifically, petitioner stated that he had difficulty finishing the exams in the allotted time because of his slow reading ability and the length of the questions on the exams. School officials noticed a significant discrepancy between petitioner's clerkship performance evaluations and his results on respondent's tests. They suggested that petitioner undergo neuropsychological testing.

In September and October 2001, petitioner underwent a series of neuropsychological tests. David Lachar, a licensed psychologist at the University of Texas-Houston, concluded that petitioner met the criteria set out in DSM-IV diagnostic code 315.0 for a reading disorder. He quoted the following passage from diagnostic code 315.0 in describing petitioner's condition:

A. Reading Achievement as measured by individually administered standardized tests

3

of reading accuracy or comprehension, substantially below that expected given the person's chronological age, measured intelligence, and age-appropriate education, and B. The disturbance in Criterion A significantly interferes with academic achievement or activities of daily living that require reading skills.

Petitioner was granted twice the allotted amount of time to take respondent's standardized exam for internal medicine on the basis of these findings and Dr. Lachar's recommendation. Petitioner passed his internal medicine clerkship in May 2002. (From this allegation, I assume that petitioner passed the respondent's standardized exam.)

Before he could graduate, petitioner had to retake the United States Medical Licensing Exam Step 1 and he had to take the United States Medical Licensing Exam Step 2. He took these exams in August 2002. Petitioner did not pass either exam; however, he was not prevented from graduating in August 2002.

In January 2003, petitioner filed a request with respondent asking that he be allotted double the standard amount of time to complete the Step 1 and Step 2 exams. Petitioner made his request because of his history of slow reading and his previous difficulties with timed exams. He submitted the findings of an independent clinical psychologist who believed that petitioner had a reading disorder with his request.

Respondent has a department within its organization that considers requests for accommodation under the Americans with Disabilities Act. Aside from a form letter indicating that his request had been received, respondent did not contact petitioner before

4

he called to inquire about the status of his request in March 2003. By letter dated March 24, 2003, respondent informed petitioner that his request had been denied. In the letter, respondent stated that petitioner had not "provided any original school records verifying childhood learning problems and accommodations for classroom instruction or on typical standardized achievement tests or other standardized examinations." Additionally, respondent indicated that petitioner had not submitted a personal statement describing his academic performance difficulties and that his documentation did not provide "an objective description of any current academic and functional problems that would rise to the level of a disability and substantially limit [his] access to [the United States Medical Licensing Exam]." Had respondent asked petitioner for this information before denying his request, he would have provided it.

In the letter denying petitioner's request for additional time, respondent stated that it had consulted an "impartial expert in the field of learning disabilities" to assist in reviewing petitioner's documentation, although it did not provide the name or qualifications of the expert. According to the letter, respondent's expert disagreed with the conclusions reached by the individuals who had administered the neuropsychological tests to petitioner. The letter stated that petitioner's documentation did not "demonstrate cognitive or academic deficits that substantially impair your ability to read and learn. Instead, your documentation indicates your performance on a range of cognitive and academic skills is in

5

the range of average to well above average."

## DISCUSSION

I understand petitioner to allege that respondent discriminated against him in violation of the Americans with Disabilities Act by denying his request for additional time to complete the United States Medical Licensing Exam.  Title III of the ADA provides in relevant part that

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189.  Respondent National Board of Medical Examiners is subject to this provision.  Powell v. National Board of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004); Gonzales v. National Board of Medical Examiners, 225 F.3d 620, 626 (6th Cir. 2000); Biank v. National Board of Medical Examiners, 130 F. Supp. 2d 986, 988 (N.D. Ill. 2000).

To allege a violation of the ADA's testing provision, petitioner must allege that he is disabled and that he requested and was denied a reasonable accommodation.  Ware v. Wyoming Bd. of Law Examiners, 973 F. Supp. 1339, 1356 (D. Wyo. 1997).  An individual is considered "disabled" under the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment,

6

or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Petitioner alleges that he was diagnosed with a disorder that impairs his ability to read. Fairly construed, this allegation suggests that petitioner may have a learning disability, which is listed as an example of a "physical or mental impairment" in Title III's implementing regulations. 28 C.F.R. §36.104. Although the regulations do not list reading as a "major life activity," courts have included reading as a major life activity under the statute. Gonzales, 225 F.3d at 626 (citing cases). At this early stage of the litigation, petitioner's allegations are sufficient to satisfy either prong 1 or 2 of the "disability" definition. In addition, petitioner has alleged that he requested and was denied a reasonable accommodation. Specifically, he alleges that he requested additional time to complete the United States Medical Licensing Exam Step 1 and Step 2 and that respondent denied his request. Allowing an individual extra time to complete an examination is among the modifications contemplated under the testing provision. 28 C.F.R. § 36.309(2). I conclude that petitioner's allegations are sufficient to state a claim under the Americans with Disabilities Act.

One point about petitioner's complaint requires further comment. In his prayer for relief, petitioner requests compensatory and punitive damages. However, monetary relief is not available to private individuals under Title III. Powell, 364 F.3d at 86. "A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." Id. This means that if petitioner prevails in this case, the most

7

he would be entitled to is an injunction ordering respondent to allow him additional time to complete the Step 1 and Step 2 exams. Petitioner did not request this relief, perhaps because he no longer wishes to pursue his medical license. Therefore, I will require him to advise the court in writing whether he wishes to pursue a claim for injunctive relief.

ORDER

IT IS ORDERED that petitioner Trenton Scheibe's request for leave to proceed in forma pauperis is GRANTED on his claim that respondent National Board of Medical Examiners violated his rights under the Americans with Disabilities Act by denying his request for additional time to complete the United States Medical Licensing Exam Step 1 and Step 2. FURTHER, IT IS ORDERED that petitioner may have until May 24, 2005 to advise the court in writing whether he wishes to continue prosecuting this case on a claim for injunctive relief only. If, by May 24, 2005, petitioner advises the court that he will prosecute this case on a claim for injunctive relief only, the court will arrange for Marshal's service of petitioner's complaint on respondent. If, however, petitioner fails to advise the court that he is interested in prosecuting a claim for injunctive relief, I will dismiss this case for petitioner's failure to request a form of relief available under Title III

8

of the Americans with Disabilities Act.

Entered this 10th day of May, 2005.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge