Case: 3:05-cv-00180-bbc Document #: 30 Filed: 04/03/06 Page 1 of 11

Document Number  Case Number
　　　　　　　　  05-C-0180-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
04/03/2006 02:29:00 PM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRENTON SCHEIBE,

                                                         OPINION and ORDER

                Plaintiff,

                                                         05-C-180-C

    v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is a civil action for injunctive relief under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12189. Plaintiff Trenton Scheibe, proceeding pro se, began this action on May 10, 2005, by filing a complaint alleging that defendant National Board of Medical Examiners had violated the ADA by denying his requests for additional time to take Steps 1 and 2 of the United States Medical Licensing Exam. Plaintiff contended that he has a reading disorder that warrants an accommodation from defendant. In an order dated May 10, 2005, I granted plaintiff's request for leave to proceed in forma pauperis on his Title III claim. However, I noted that plaintiff had asked for monetary relief in his complaint and warned him that he would not be able to obtain monetary relief against defendant because Title III allows only injunctive relief in actions brought by private citizens. Therefore, I

1

ordered plaintiff to advise the court whether he wished to continue prosecuting this case on a claim for injunctive relief only.

On May 24, 2005, plaintiff responded to the court's order, indicating that he wished to continue prosecuting the case because, although he had passed Steps 1 and 2 of the exam, he had not passed Step 3. He asked that the court award him injunctive relief "for all future exams the [plaintiff] will be subjected to by [defendant] in the [plaintiff]'s pursuit of his medical career," Response to Order, dkt. #3, at 1, and compensatory damages for defendant's intentional discrimination. Plaintiff's response prompted another order from the court warning him again that monetary relief was not available in private suits under Title III. On January 6, 2006, the day that dispositive motions were due, plaintiff filed a motion to voluntarily dismiss the case pursuant to Fed. R. Civ. P. 41(a). However, because defendant insisted that dismissal be with prejudice, plaintiff's motion was withdrawn and the dispositive motion deadline was extended.

Presently before the court is defendant's motion for summary judgment. Defendant argues that it is entitled to summary judgment because plaintiff is not disabled for the purpose of the ADA and because this case does not present a live case or controversy within the meaning of Article III. For the reasons stated below, I will grant defendant's motion. In brief, I agree with defendant that this court lacks jurisdiction to decide the case because no case or controversy exists between the parties. In light of my conclusion that the court

2

lacks jurisdiction to hear this case, I cannot and will not address the question whether plaintiff is disabled under the ADA.

In setting out the undisputed facts, I have included those proposed findings and responses relevant to the issue of this court's jurisdiction. Proposed findings related to plaintiff's efforts to secure an accommodation have been summarized. From the parties' proposed findings of fact, I find the following to be material and undisputed.

UNDISPUTED FACTS

A.  Parties

At the time he filed this action, plaintiff Trenton Scheibe was an adult resident of Marshfield, Wisconsin. Plaintiff graduated sixth out of 281 students at Marshfield High School in 1987. In 1991, he graduated cum laude from Marquette University with a degree in accounting. Plaintiff received his law degree in 1994 from the University of Texas-Houston and his medical degree from the University of Texas Medical School at Houston in August 2002. Defendant National Board of Medical Examiners is a non-profit corporation with its principal office in Philadelphia, Pennsylvania.

B.  The United States Medical Licensing Examination

Along with the Federation of State Medical Boards, defendant has created the United

3

States Medical Licensing Examination.  State medical licensing authorities use the results of this examination to assess the qualifications of candidates for medical licensure.  The exam is an integral part of each state's effort to ensure that only competent and qualified individuals are licensed to practice medicine.  All fifty states rely on the exam to distinguish qualified from unqualified candidates.  Defendant is responsible for insuring that the exam is administered under standard conditions that insure the integrity of test scores and that protect the public's interest in the medical licensure process.  Accordingly, defendant is responsible for insuring that no candidate or group of candidates receives an unfair advantage in the administration of the exam.

     The exam consists of three phases, or "steps."  All medical licensing authorities in the United States accept passage of all three steps as sufficient to satisfy the examination requirements for licensure as a physician.  Step 1 assesses whether a candidate can understand and apply important concepts of the sciences basic to the practice of medicine.  Step 2 assesses a candidate's ability to apply medical knowledge, skills and understanding of clinical sciences essential for the provision of patient care under supervision.  Generally, candidates take Step 1 at the end of the second year of medical school and take Step 2 during their fourth year of medical school.

     Step 3 assesses whether a candidate can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine.  Step

4

3 is administered by Thomson Prometric, the test-delivery vendor for the exam, at one or more facilities located throughout the United States. To be eligible for Step 3, a candidate must (1) obtain a degree in medicine or osteopathy; (2) pass Steps 1 and 2; and (3) meet the requirements for taking Step 3 set by the state medical board to which he is applying for licensure, such as the completion of any postgraduate training requirements. Each state has its own requirements that candidates must meet to be eligible to sit for Step 3. Often, candidates take Step 3 during or after the first year of residency training and after they have obtained their medical degrees.

### C. Processes for Requesting Accommodations for the Exam

With respect to Steps 1 and 2, defendant is responsible for insuring that persons who qualify as disabled under the Americans with Disabilities Act receive reasonable accommodations during test-taking. Defendant's website provides detailed instructions for candidates applying for accommodations. A candidate must provide evidence of a significant impairment relative to the exam including, but not limited to information regarding the nature of the disability, its impact on the candidate's daily life and on tasks relevant to the exam, the type of accommodation sought and a history of prior accommodations, if any. Also, a candidate must provide documentation from qualified professionals describing the disability and explaining the propriety of the requested accommodation.

Defendant's Disability Services staff reviews accommodation requests. During the review process, defendant may consult outside experts to assist in determining whether the documentation submitted by the candidate supports the finding of a disability or whether additional information is needed. The experts conduct a thorough review of each case and prepare detailed written reports with recommendations for defendant. Defendant determines whether to grant requests for accommodations or to request further information after reviewing these expert reports and its own review of the requests.

With respect to Step 3, it is the responsibility of the state medical board sponsoring a candidate to sit for Step 3 to insure that candidates with disabilities receive accommodations unless the state medical board has formally authorized the federation to act on the state's behalf. Candidates requesting an accommodation for Step 3 must submit a request to the appropriate state medical board or the federation. The request is referred to defendant for review and processing. After defendant's experts review the request, defendant issues a recommendation to the state medical board or the federation, which makes the decision whether to grant any accommodation. The state medical board or the federation may accept or reject defendant's recommendation in part or in whole.

### D.  Plaintiff's Requests for Accommodation

Plaintiff made his first request for an accommodation for the exam on January 6,

6

2003. At that time, he had taken Step 1 twice and Step 2 once without passing. In a questionnaire, plaintiff indicated that he was requesting "double testing time" for Steps 1 and 2 because of an alleged reading disorder. Defendant denied his request on March 24, 2003. On January 29, 2004, plaintiff passed Step 1 without any accommodation from defendant.

In October 2004, plaintiff submitted another request for double testing time for Step 2. Defendant reviewed plaintiff's request and denied it in a letter dated January 24, 2005. Plaintiff passed Step 2 on February 8, 2005 without any accommodation from defendant. The only part of the exam that plaintiff has not passed is Step 3. To date, plaintiff has not applied to a state medical board to sit for Step 3 or requested any accommodation for Step 3. An accommodation request for Step 3 cannot be considered until plaintiff is sponsored by a state medical board to take Step 3 and requests an accommodation.

## OPINION

Article III of the United States Constitution limits the jurisdiction of federal courts to deciding cases or controversies. To create a "case or controversy," a party seeking relief in federal court must show that he has standing to sue. To meet this requirement, the party must show that he has suffered an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent," as opposed to "conjectural" or "hypothetical." McConnell v.

7

Federal Election Commission, 540 U.S. 93, 225 (2003); Gillespie v. Dimensions Health Corp., 369 F. Supp. 2d 636, 640 (D. Md. 2005).  Where, as in this case, a plaintiff seeks prospective injunctive relief, he must show that he "is immediately in danger of sustaining some direct injury."  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (citation and quotations omitted);  see also Sierakowski v. Ryan, 223 F.3d 440, 443 (7th Cir. 2000) (plaintiff seeking injunctive relief must show "significant likelihood and immediacy of sustaining some direct injury"); Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003) (injunctive relief requires "real and immediate - as opposed to a merely conjectural or hypothetical - threat of *future* injury") (emphasis in original).

In addition, the party must show that his injury is "fairly traceable" to the defendant's conduct and that there is a "substantial likelihood" that the requested relief will redress the harm.  Id.; see also Raines v. Byrd, 521 U.S. 811, 818-19 (1997).  Without such a showing, a federal court has no authority to consider the party's arguments on the merits.  Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 778 (2000) ("Questions of jurisdiction, of course, should be given priority - since if there is no jurisdiction there is no authority to sit in judgment of anything else.").  Plaintiff bears the burden of establishing by a preponderance of the evidence that standing exists.  Lee v. City of Chicago, 330 F.3d 456, 468 (7th Cir. 2003).

It is undisputed that defendant denied plaintiff's requests for an accommodation in

8

connection with Steps 1 and 2 of the exam. Even if defendant had violated Title III of the ADA by doing so, this would be insufficient to establish plaintiff's standing to seek injunctive relief with respect to Step 3. Stewart v. McGinnis, 5 F.3d 1031, 1037 (7th Cir. 1993) ("evidence of past wrongs alone is insufficient to merit equitable relief"); Hoepfl v. Barlow, 906 F. Supp. 317, 320 (E.D. Va. 1995) ("established standing rules preclude a plaintiff from obtaining injunctive relief based only on events that occurred in the past, even if the past events amounted to a violation of federal law."). Rather, plaintiff must prove that he is in imminent danger of being denied an accommodation by defendant in the future. The undisputed facts indicate that plaintiff cannot meet this burden for two reasons.

    First, plaintiff is not in immediate danger of sustaining a direct injury. The only step of the exam plaintiff has yet to pass is Step 3. However, he has not registered with a state medical board or the federation to sit for Step 3 and he has not presented any evidence showing that he intends to do so. Cf. Harris v. Del Taco, Inc., 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005) ("an ADA plaintiff can demonstrate actual or imminent injury by establishing that he or she intends to return to the public accommodation if it is made accessible"). The closest plaintiff comes to establishing his intent to register for Step 3 is in his response to defendant's proposed finding of fact #83, where plaintiff states that "to the best of my knowledge, I am otherwise qualified to apply for and to sit for the USMLE Step 3 in at least one state." Plt.'s Resp. to Dft.'s PFOF, dkt. #24, at 15. But this statement is

9

not enough to establish that plaintiff faces an imminent threat of injury. Plaintiff's belief that he is qualified to sit for Step 3 in an unnamed state does not establish his intent to register for Step 3. Without a statement from plaintiff that he intends to register for Step 3 in a specific state, the court is left with nothing more than speculation that plaintiff might pursue this course of action at some point in the future. Speculation or a possibility of future harm is not sufficient to support standing to seek injunctive relief. Lyons, 461 U.S. at 110; Palmer v. City of Chicago, 755 F.2d 560, 572 (7th Cir. 1985).

Even if plaintiff had introduced evidence showing that he faced an imminent and real threat of injury, he would not have standing to pursue his claim against defendant because defendant's recommendations on accommodation requests are not determinative with respect to Step 3. This dovetails with the second and third requirements of standing, which require that the threat of injury be fairly traceable to defendant's conduct and that there be a substantial likelihood that relief will redress the threat. Although defendant's decisions with respect to accommodation requests appear to be final for Steps 1 and 2, that is not the case with respect to Step 3. The state medical boards or the Federation of State Medical Boards have the final say with respect to accommodations for Step 3. Defendant reviews requests for accommodation and makes recommendations, but the state medical boards or the federation may reject defendant's recommendations. Plaintiff has not introduced any evidence showing that the state medical boards always follow defendant's recommendations.

Therefore, with respect to Step 3, the threat that an accommodation request made by plaintiff might be denied is traceable to the state medical board that sponsors him, not defendant. An injunction against defendant would not redress the threat of harm plaintiff faced.

The court is not unsympathetic to plaintiff's situation. Unfortunately, neither the law nor the facts are on plaintiff's side in this case. Because plaintiff lacks standing, the court lacks jurisdiction to consider his case. Therefore, defendant's motion must be granted.

ORDER

IT IS ORDERED that defendant National Board of Medical Examiner's motion for summary judgment is GRANTED and this case is DISMISSED for lack of jurisdiction. The clerk of court is directed to close this case.

Entered this 3rd day of April, 2006.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

11